IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br>United States Department of Justice<br>Antitrust Division<br>450 Fifth Street, NW, Suite 7100<br>Washington, DC 20530<br><br>Plaintiff,<br><br>v.<br><br>Google Inc.<br>1600 Amphitheatre Parkway<br>Mountain View, CA 94043<br><br>and<br><br>ITA Software, Inc.<br>141 Portland Street<br>Cambridge, MA 02139<br><br>Defendants. | Civil Action No.<br><br>(Antitrust)<br><br>Filed: |

**COMPLAINT**

The United States of America, acting under the direction of the Attorney General of the United States, brings this civil action against Google Inc. ("Google") and ITA Software, Inc. ("ITA") pursuant to the antitrust laws of the United States to enjoin Google's proposed acquisition of ITA, and to obtain such other equitable relief as the Court deems appropriate. The United States alleges as follows:

## I. NATURE OF ACTION

1. On July 1, 2010, Google, a significant provider of general Internet search and search advertising in the United States, entered into a merger agreement to acquire ITA, the provider of the leading independent airfare pricing and shopping system ("P&S system"), for $700 million. P&S systems provide flight pricing, schedule and seat availability information to Internet travel sites.

2. Online travel represents a significant share of e-commerce in the United States. Consumers rely on the Internet to make their travel plans, and often begin by shopping for airfare. Online travel intermediaries ("OTIs") such as Orbitz, Kayak and Expedia allow consumers to compare flight prices, schedules, and seat availability on multiple airlines simultaneously. OTIs, and the flight search services they offer, have become very popular with consumers who want to ensure they are getting the best deal. Indeed, most U.S. consumers compare flight options on an OTI website before purchasing a ticket online.

3. ITA's P&S system, QPX, powers a significant share of the domestic comparative flight searches conducted by U.S. consumers. ITA licenses QPX to many of the most popular and innovative OTI's providing comparative flight search services, including Orbitz, Kayak, and Microsoft's Bing Travel. QPX is a critical flight search tool for many of its licensees, as other P&S systems cannot match its speed and flexibility, and are not poised to do so in the near future. Thus, these OTIs currently have no adequate alternatives to QPX and will not have any following the merger.

4. Google has the most widely used general Internet search engine in the United States and is the leading seller of Internet search advertising. Google seeks to

expand its search services by launching an Internet travel site to offer comparative flight search services.

5. The proposed merger will give Google the means and incentive to use its ownership of QPX to foreclose or disadvantage its prospective flight search rivals by degrading their access to QPX, or denying them access to QPX altogether. As a result, the proposed merger is likely to result in reduced quality, variety, and innovation for consumers of comparative flight search services.

## II. JURISDICTION, VENUE AND COMMERCE

6. The United States brings this action under Section 15 of the Clayton Act, as amended, 15 U.S.C. § 25, to prevent and restrain Google and ITA from violating Section 7 of the Clayton Act, as amended, 15 U.S.C. § 18.

7. Google is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located in Mountain View, CA. In 2009, Google earned more than $23 billion in revenues in the United States. Google is engaged in interstate commerce and in activities substantially affecting interstate commerce. It sells online search advertising throughout the United States. Its sales of online search advertising in the United States represent a regular, continuous and substantial flow of interstate commerce, and have had a substantial effect upon interstate commerce.

8. ITA is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located in Cambridge, MA. ITA is engaged in interstate commerce and in activities substantially affecting interstate commerce. It makes sales throughout the United States. Its sales in the United States

represent a regular, continuous and substantial flow of interstate commerce, and have had a substantial effect upon interstate commerce.

9. The Court has subject-matter jurisdiction over this action and these defendants pursuant to Section 15 of the Clayton Act, as amended, 15 U.S.C. § 25, and 28 U.S.C. §§ 1331, 1337(a), and 1345.

10. Venue is proper in this District under Section 12 of the Clayton Act, 15 U.S.C. § 22, and 28 U.S.C. § 1391(b)(1) and (c). Defendants Google and ITA transact business and are found within the District of Columbia. Google and ITA have submitted to personal jurisdiction in this District.

## III. THE MERGER IS LIKELY TO LESSEN COMPETITION SUBSTANTIALLY IN THE MARKET FOR COMPARATIVE FLIGHT SEARCH SERVICES IN THE UNITED STATES

### *A. Overview of Comparative Flight Search Services and P&S Systems*

11. Major airlines developed the first flight search systems in the 1950s and 1960s for their own internal use. In the 1970s, the airlines started releasing specialized versions of these systems for use by professional "brick and mortar" travel agents. These systems provided both flight search and booking functionality. They were known first as "computer reservation systems" ("CRSs"), and later as "global distribution systems" ("GDSs") as airlines divested their ownership interests and the companies expanded their presence outside of the United States. The GDS firms function as intermediaries between the airlines looking to sell tickets and travel agents with customers looking to buy tickets.

12. The early flight search systems were relatively limited in their search capabilities. They generated a limited set of results per query, and did not present the list of flight options in a user-friendly format. Travel agents received special training in

order to use the systems, and brought their training and experience to bear both in performing flight queries and interpreting the results for consumers. Consumers made travel decisions based on information extracted from these systems by professional travel agents.

13. With the advent of the Internet, two different types of OTIs emerged that allow U.S. consumers to search for domestic flight prices, schedules, and seat availability on multiple airlines simultaneously: online travel agencies ("OTAs") such as Expedia, Travelocity and Priceline, and travel meta-search engines ("Metas") such as Kayak, TripAdvisor and Bing Travel. Like the "brick and mortar" travel agencies, OTAs provide both flight search and booking services. Also like the "brick and mortar" travel agencies, OTAs split booking fees with the GDSs. They supplement this revenue by selling advertising on their websites to airlines, hotels and other companies offering travel-related products and services.

14. Metas enable consumers to search for flights but do not offer booking services. When a consumer on a Meta travel site enters a flight query, the Meta provides a set of flight options, and for each option, a set of links to various airline and OTA websites. To purchase a ticket, the consumer must click a link to an airline or OTA website. In contrast to OTAs, which generate revenue primarily through booking fees and secondarily through advertising sales, Metas generate revenue through advertising sales and referral fees collected from the airlines and OTAs.

15. To attract traffic, Metas generally offer innovative flight search features that capture the consumer's attention, and provide an array of attractive flight options in response to each query. Metas also prioritize quick response times because consumers on

their sites are often at an earlier stage of the travel planning process, and are less likely to endure a prolonged wait for search results. Although Metas are the newcomers, they are driving competition in comparative flight search services through innovation, and are progressively gaining ground.

16. To perform a flight search on an OTA or a Meta, a consumer typically enters an origin and destination city and desired travel dates and times. The travel site then provides a number of options on different airlines with varying routes and pricing. Some travel sites – particularly the Metas – also offer more sophisticated and innovative flight search features, for example, a fare predictor that allows consumers to identify the best time to buy a ticket for a particular trip, or an "anywhere" feature that allows them to explore different destinations by specifying a price range, desired activity *(e.g.*, beach, golf, skiing) and desired temperature *(e.g.*, average high of 80).

17. To provide flight search functionality, OTAs and Metas rely on P&S systems such as ITA's QPX. A system includes not only the P&S engine software, but also on-going access to seat and fare class availability data. When a consumer on a Meta or OTA website submits a flight query (*e.g.*, Boston to San Francisco, March 1, 2011, returning March 14, 2011), the website sends the query to the P&S system. The P&S system accesses the fare, schedule, and seat availability information of multiple airlines, and uses a sophisticated algorithm to analyze the flight possibilities and convert the query into a list of available flight options. It sends these options back to the OTA or Meta, which presents the available flight options to the consumer in a format that facilitates comparison (*e.g.*, organized by price, departure or arrival time, or number and length of connections). P&S systems differ in their speed; flexibility; ability to find the lowest

price itinerary; ability to obtain accurate seat availability information; and breadth of results presented.

18. Although the flight queries submitted on OTA and Meta websites are often simple, the computing challenges involved in providing the underlying flight search functionality are quite significant. Airfare pricing and seat availability change from moment to moment, and are governed by a complex system of fare rules that vary by airline. There are thousands of possible flight paths that can be used to travel between any two cities on a given day; when different airlines, departure and arrival times, and fare codes are taken into account, the number of possible flight combinations can number in the billions. In order to present consumers with flight options that are actually available for purchase, the billions of possible combinations must be checked against seat availability data and fare rules.

B. *Relevant Product Market*

1. *Comparative Flight Search Services*

19. One of the markets affected by this transaction is comparative flight search services. Comparative flight search service providers enable consumers to search online for flight prices, schedules, and seat availability on multiple airlines simultaneously. Comparative flight search services is a relevant antitrust product market because no other flight search service is as useful and convenient to consumers.

20. Current competitors in this market include Metas (*e.g.*, Kayak and Bing Travel), and OTAs (*e.g.*, Expedia, Orbitz and Travelocity) whose comparative flight search services can be consumed separately from their flight booking and other travel services.

21. Airline websites and reservation lines are not reasonable substitutes for comparative flight search services because they do not allow consumers to compare prices and schedules across multiple airlines simultaneously. It is significantly more cumbersome for a consumer to compare flight prices and schedules by going to many different airlines' websites separately, and even then the consumer might not find the best fare.

22. Using a "brick and mortar" travel agent is also not a reasonable substitute for comparative flight search services online because travel agents do not provide the same sort of user control, instantaneous response, and flight search flexibility as OTAs and Metas.

23. There are no reasonable substitutes for comparative flight search services, and thus, a small but significant degradation in the quality of comparative flight search services or increase in price to consumers of these services would not cause a significant number of users to switch to other services, such as airline websites or "brick and mortar" travel agents. Accordingly, comparative flight search services is a relevant product market for purposes of Section 7 of the Clayton Act.

2. *P&S Systems*

24. This transaction also impacts the P&S systems market. P&S systems have two main components: a continuously-updated database of airline pricing, schedule and seat availability information, and a software algorithm used to search the database for flight options that best match consumers' search criteria. The significant competitors in this market include ITA, Travelport, Sabre, Amadeus, and Expedia.

25. P&S systems is a relevant antitrust product market because no other comparative flight search technology is as fast or as reliable. The closest alternative to P&S systems is screen-scraping software which pulls or "scrapes" airline pricing and scheduling information from airline websites and other OTIs instead of accessing a centralized database of flight pricing, schedule, and seat availability information. Screen-scraping technology is not a reasonable substitute for P&S systems because it is significantly slower and less reliable.

26. A small but significant increase in the licensing fees charged to OTIs for use of P&S systems would not cause a sufficient number of these sites to substitute to screen scraping technology to make such price increases unprofitable. Accordingly, P&S systems is a relevant product market for purposes of Section 7 of the Clayton Act.

C. *Relevant Geographic Market*

1. *Comparative Flight Search Services*

27. The relevant geographic market for comparative flight search services is the United States. All the major OTIs that allow consumers to compare domestic flight prices and schedules are optimized for use by U.S. consumers. While some of the websites have foreign versions (*e.g.*, www.expedia.co.uk), the foreign versions are not adequate substitutes for most U.S. consumers because they list flight prices in their local currency, and sell tickets in that currency, requiring a currency conversion fee.

2. *P&S Systems*

28. The relevant geographic market for P&S systems is the United States. In order for a P&S system to serve U.S. consumers, it must have access to comprehensive and reliable seat and fare class availability data on routes with at least one U.S. endpoint,

and software which provides fare, tax, and fee calculations denominated in U.S. dollars. Accordingly, OTIs serving U.S. consumers cannot reasonably substitute software that is optimized for a different geographic market (*e.g.*, Europe) and not the United States.

D. *Anticompetitive Effects*

29. The acquisition of ITA by Google is likely to lessen competition substantially in the market for comparative flight search services in the United States. After acquiring ITA, Google intends to use QPX as the back-end technology for its forthcoming comparative flight search services. Google's travel service will compete with OTIs. As Google has recognized, QPX is a unique P&S system because it has superior features that cannot be quickly replaced or replicated. After acquiring QPX, Google will have the ability and incentive to foreclose competing OTIs' access to QPX and thereby weaken the ability of its rivals to compete.

1. *ITA's QPX is Dominant in P&S Systems and Serves as the Leading Platform for Websites Offering the Most Innovative Flight Search Services*

30. Since its entry into the P&S systems market in 2001, ITA has dramatically expanded its portfolio of customers. ITA has won virtually every competition for business in the United States in which the customer did not already have a P&S system provider or product. At the same time, ITA has lost very few customers. Today, QPX powers all major Metas and three major OTAs and handles more domestic flight comparison queries than any other P&S system. QPX is widely recognized as the best P&S system in the U.S. market due to its superior speed and flexibility.

31. QPX has a significant speed advantage because it can more quickly determine seat availability using its proprietary Dynamic Availability Calculating System

("DACS"). ITA's DACS is a unique system which can quickly estimate seat availability without polling the airlines' systems (which slows the process) or relying on data from prior queries (which is sometimes stale and inaccurate). Speed is important because the longer it takes to respond to a query, the greater the likelihood that the consumer will abandon the search and switch to another flight search site.

32. QPX is also highly configurable. QPX has more than a thousand different parameters that can be adjusted or "tuned" to meet the needs of individual travel site customers. QPX's flexibility also allows it to more efficiently handle the complex queries demanded by more innovative flight search features such as Bing Travel's Fare Predictor, which predicts whether prices for a particular route are trending up or down.

33. ITA also leads in P&S system innovation. For example, ITA is developing a new product called InstaSearch which relies on cutting-edge computing techniques to significantly reduce query response times. ITA expects InstaSearch to be particularly useful in reducing the response times for more innovative flight search features such as "calendar" features which allow consumers to search for the lowest fares for a particular route over a period of weeks or months; and "anywhere" features which enable consumers to explore different destinations by specifying a price range, desired activity (*e.g.*, beach, golf, skiing) and desired temperature.

34. QPX's flexible design makes it the tool of choice for Metas. Indeed, ITA is the only P&S system currently capable of supporting many of the innovative comparative flight search services that are the core attraction for these travel sites.

2. *Currently Available P&S System Alternatives are Not Adequate Substitutes for QPX*

35. The three GDSs – Sabre, Travelport and Amadeus – license P&S systems to third-parties (generally OTAs), but usually as part of a broader software package that includes booking and ticketing functionality. In addition, one of the OTAs, Expedia, has a proprietary P&S system to support its own travel website, which is based on a GDS product, but it has never licensed its system to third parties.

36. QPX's significant qualitative advantages have prompted some OTIs with ready access to a GDS or proprietary P&S system to license QPX. For example, Hotwire, an OTA, and TripAdvisor, a Meta, license QPX even though their corporate affiliate, Expedia, owns and operates its own proprietary P&S system. Similarly, Orbitz and Cheaptickets are part-owned (48%) by Travelport, one of the GDS firms, but have opted to license ITA's QPX because it provides superior flight search functionality.

37. ITA has a superior flight search tool and is driving innovation in P&S system technology. Although the GDS firms and Expedia have responded by improving their P&S systems, they continue to be followers rather than leaders. As competition both in P&S systems and comparative flight search services is driven increasingly by innovation, the GDS firms have been unable to close the gap allowing ITA to progressively grow its share.

3. *Google Will Have the Incentive to Foreclose Rivals' Access to QPX*

38. The proposed merger will eliminate ITA as an independent and unique source of P&S system technology for competing OTIs, potentially stripping these sites of the technology needed to support their existing comparative flight search services, and

delaying or deterring their efforts to develop new flight search features. After the merger, Google would have the ability to use its ownership of QPX to foreclose or disadvantage rivals of Google's travel service. For example, Google could refuse to renew existing QPX contracts, refuse to enter into new QPX contracts, enter into contracts on less favorable terms than ITA would have, or degrade the speed or quality of QPX offered to licensees. Unlike ITA, Google plans to develop a travel website. Therefore, Google will have the incentive to weaken competing OTIs by denying or degrading their access to QPX because increased profits from driving customers to its new travel service from rival OTIs will likely outweigh any lost profits from reduced licensing revenues from QPX.

39. The elimination of an independent ITA will also reduce travel site innovation. ITA partners with many different travel sites, and consumers have benefitted from the variety of flight search features that these collaborations have produced. Thus, consumers are likely to be harmed through reduced innovation and diminished consumer choice in the comparative flight search services market.

40. Finally, the proposed merger will provide Google access to competitively sensitive information from competing OTIs relating to their use of QPX, including tuning parameters and plans to offer new or improved services. Disclosure of such competitively sensitive information from competitors to Google will likely harm competition in the market for comparative flight services.

E. *Difficulty of Entry in the Comparative Flight Search Services Market*

41. The proposed merger would raise entry barriers into the comparative flight search market by placing QPX into Google's hands and beyond the reach of potential

entrants. P&S systems are a critical input to the provision of comparative flight search services. No other firm offers a P&S system that is comparable to QPX.

42. The entry barriers associated with developing a new P&S system are extremely high. Indeed, two firms, Vayant and Everbread, have been developing P&S systems for several years, but have yet to garner any significant U.S.-based OTIs as customers. In addition, Google looked at developing its own P&S system as an alternative to acquiring ITA but concluded it would take several years and require numerous engineers due to the complexity of the algorithms.

## VI. VIOLATION ALLEGED

43. The United States incorporates the allegations of paragraphs 1 through 41 above.

44. The proposed transaction between Google and ITA would likely substantially lessen competition in interstate trade and commerce in violation of Section 7 of the Clayton Act, 15 U.S.C. § 18, in the market for comparative flight search services in the United States.

## VII. RELIEF REQUESTED

45. The United States request that:

a. the proposed merger of Google and ITA be adjudged to violate Section 7 of the Clayton Act, 15 U.S.C. § 18;

b. Google and ITA be enjoined from carrying out the proposed merger or carrying out any other agreement, understanding, or plan by which Google and ITA would acquire, be acquired by, or merge with each other;

c. The United States be awarded their costs of this action; and

d. The United States receive such other and further relief as the case requires and the Court deems just and proper.

Dated: April 8, 2011

Respectfully submitted,

FOR PLAINTIFF UNITED STATES:

KATHERINE B. FORREST
Deputy Assistant Attorney General

JOSEPH F. WAYLAND
Deputy Assistant Attorney General

PATRICIA A. BRINK
Director of Civil Enforcement

JAMES J. TIERNEY (DC Bar # 434610)
Chief
SCOTT A. SCHEELE (DC Bar # 429061)
Assistant Chief
Networks and Technology Enforcement Section

AARON D. HOAG
Attorney
Networks and Technology Enforcement Section
Antitrust Division
U.S. Department of Justice
450 Fifth Street, N.W., 7th Floor
Washington, DC 20530
Telephone: (202) 307-6153
Fax: (202) 616-8544
Email: aaron.hoag@usdoj.gov

MICHAEL D. BONANNO (DC Bar # 998208)
KENT BROWN
PAM COLE
AARON COMENETZ (DC Bar # 479572)
LAUREN I. DUBICK
JOHN F. GREANEY
F. PATRICK HALLAGAN
DANIELLE G. HAUCK
ANURAG MAHESHWARY (DC Bar # 490535)
ALEXANDER PAUL OKULIAR (DC Bar # 481103)
KATHLEEN S. O'NEILL
ADAM T. SEVERT
RYAN S. STRUVE (DC Bar # 495406)
JENNIFER A. WAMSLEY (DC Bar # 486540)
Attorneys for the United States

**CERTIFICATE OF SERVICE**

I, Aaron D. Hoag, hereby certify that on April 8, 2011, I caused a copy of the Complaint to be served on defendants Google Inc. and ITA Software, Inc. by mailing the document via email to the duly authorized legal representatives of the defendants, as follows:

For Google:

John D. Harkrider
Axinn, Veltrop & Harkrider LLP
114 West 47th Street
New York, NY 10036
Email: jdh@avhlaw.com

For ITA:

Michele Sasse Harrington
Hogan Lovells US LLP
555 Thirteenth Street, NW
Washington, DC 20004
Email: michele.harrington@hoganlovells.com

FOR PLAINTIFF
UNITED STATES OF AMERICA

Aaron D. Hoag
Attorney
U.S. Department of Justice
Antitrust Division
450 Fifth Street, N.W., 7th Floor
Washington, D.C. 20530
Tel: (202) 307-6153
Fax: (202) 616-8544
Email: aaron.hoag@usdoj.gov