## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| |
|---|
| UNITED STATES OF AMERICA,<br><br>       Plaintiff<br><br>       v.<br><br>GOOGLE INC.<br><br>     and<br><br>ITA SOFTWARE, INC.<br><br>       Defendants. |

Case: 1:11-cv-00688 (RLW)

## FINAL JUDGMENT

WHEREAS, Plaintiff United States of America ("United States") filed its Complaint on April 8, 2011, the United States and Defendants Google Inc. and ITA Software, Inc., by their respective attorneys, have consented to entry of this Final Judgment without trial or adjudication of any issue of fact or law, and without this Final Judgment constituting any evidence against or admission by any party regarding any issue of fact or law;

AND WHEREAS, Defendants agree to be bound by the provisions of the Final Judgment pending its approval by the Court;

AND WHEREAS, the United States requires that Defendants agree to undertake certain actions and refrain from certain conduct for the purpose of remedying the loss of competition alleged in the Complaint;

AND WHEREAS, Defendants have represented to the United States that the actions and conduct restrictions can and will be undertaken and that Defendants will later raise no claim of

hardship or difficulty as grounds for asking the Court to modify any of the provisions contained below;

NOW THEREFORE, before any testimony is taken, without trial or adjudication of any issue of fact or law, and upon consent of Defendants, it is ORDERED, ADJUDGED AND DECREED:

## I.   **JURISDICTION**

This Court has jurisdiction over the subject matter of and each of the parties to this action.  The Complaint states a claim upon which relief may be granted against Defendants under Section 7 of the Clayton Act, as amended (15 U.S.C. § 18).

## II.   **DEFINITIONS**

As used in this Final Judgment:

A.   "AAA" means the American Arbitration Association.

B.   "Affiliate" means, with respect to any entity, another entity that controls, is controlled by or is under common control of the first entity.

C.   "Airline Customer" means a Customer that operates an airline or is an Affiliate of an airline.

D.   "Availability Information" means information about the availability of a seat at a specific booking class on a specific flight obtained by ITA as an input to QPX, including information in ITA's Dynamic Availability Calculating System and its system for processing other types of availability data, including Availability Status ("AVS") and Numeric Availability Status ("NAVS"), but excluding fully computed pricing and shopping results.

E.      "Covered Employee" means an employee of a Defendant having as a job responsibility the day-to-day development of, or day-to-day strategic decision-making with respect to, the Google Consumer Flight Search Service, other than an Excepted Employee.

F.      "Customer" means a company that has entered into a QPX Agreement or an agreement for InstaSearch with Defendants.  Customer does not include Google or ITA.

G.      "Customized Software" means any version of QPX or the InstaSearch Service that is modified specifically for a Customer in response to a request made by a Customer for particular features or functionality not included in the commercially available version of QPX or the InstaSearch Service.  If the modified version is made available to other Customers (other than Affiliates of the requesting Customer), it no longer qualifies as "Customized Software" (provided that Customized Software that is provided in response to good faith requests from two or more Customers may be substantially similar).

H.      "Database Query," with respect to any OTI, has the definition set forth in the QPX Agreement in effect between ITA and such OTI (or a definition given therein for "observation query").

I.      "Defendants" means Google and ITA, as defined below, and any successor or assign to all or substantially all of the business or assets of Google and ITA involved in the provision of QPX, the InstaSearch Service, or the Google Consumer Flight Search Service.

J.      "Embedded Software" means any version of QPX or the InstaSearch Service that is modified from the commercially available version for the purpose of integrating it into software that provides significantly greater functionality than QPX or the InstaSearch Service,

such as a passenger reservation system or Internet booking engine.  The software into which such version of QPX is integrated shall also be deemed "Excluded Software."

K.      "EU" means an execution unit (a measure of the independent processing cores in a server).  For example, a single core such as an Intel Pentium 4 has one EU, whereas a dual core chip such as the Intel Pentium D has two EUs.  A dual Intel Pentium D server, in turn, would have four EUs.

L.      "Excepted Employee" means an individual employed by ITA at the time of the complaint in this matter who has been designated in writing by Defendants and approved by the United States.  With the consent of the United States,  which shall not be unreasonably withheld, Defendants shall be entitled to designate a replacement for any Excepted Employee who is no longer employed by Defendants or ceases to have day-to-day job responsibilities involving QPX or InstaSearch.

M.      "Excluded Information" means:

(1)     information available to the public or obtained by a Defendant from a third-party not under an obligation of confidentiality to the OTI licensee of QPX who disclosed such information to a Defendant;

(2)     information obtained by Google as part of its web search business;

(3)     information provided to a Defendant in connection with a product or service other than QPX or the InstaSearch Service; and

(4)     schedule, fare, flight or availability information of any airline.

Nothing in any QPX Agreement shall be read as modifying the definition of Excluded Information so as to require Defendants to treat any Excluded Information as OTI Confidential Information pursuant to this Final Judgment.

N.      "Excluded Software" means (i) Customized Software; (ii) Embedded Software; and (iii) Experimental Software.

O.      "Experimental Software" means a beta or test version of QPX or the InstaSearch Service that is made available to a limited number of customers, for a limited period of time, specifically for the purpose of testing new or modified features prior to the commercial release of those new or modified features as part of QPX or the InstaSearch Service.  While Defendants remain free to determine whether a new or modified feature is ever ultimately incorporated into the commercially available version of QPX or the InstaSearch Service that must be licensed pursuant to this Final Judgment, Defendants may not use the exclusion of Experimental Software to circumvent the licensing obligation set forth in Section IV.E.

P.      "Final Offer" means the proposed pricing terms for a QPX Agreement and/or InstaSearch Agreement, pursuant to which Defendants will provide QPX and/or InstaSearch to the OTI.

Q.      "Google" means Defendant Google Inc., a Delaware corporation headquartered in Mountain View, California, any successor to all or substantially all of its business or assets, and its subsidiaries (whether partially or wholly owned), divisions, groups, Affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees (but excluding in all cases ITA, as defined below).

R.      "Google Consumer Flight Search Service" means a publicly available website, product or service owned or operated by a Defendant that provides airfare price, schedule or Availability Information to consumers based on results returned from an airfare pricing and shopping engine, as well as any syndicated versions thereof.

S.      "Google Services" means websites, products or services owned or operated by a Defendant, including but not limited to the Google Consumer Flight Search Service.

T.      "InstaSearch" means a technology under development by ITA prior to the date of the Complaint herein in which specified pricing and shopping queries are pre-computed using QPX, stored in a cache and made available to one or more Customers from the cache.

U.      "InstaSearch Agreement" means an agreement between a Defendant and an OTI, negotiated pursuant to the terms of this Final Judgment, providing such OTI the right to submit queries to the InstaSearch Service, subject to the terms and conditions set forth in Section IV.H of this Final Judgment.

V.      "InstaSearch Proof of Concept" means a specific implementation of InstaSearch, incorporating a QPX cache and associated interfaces, that ITA, prior to the date of the Complaint herein, agreed to deliver as a proof-of-concept to a Customer, as more fully defined in a Solution Document/Interface Definition Document (the "InstaSearch POC Solution Document"), attached to this Final Judgment as Exhibit 1.

W.      "InstaSearch Service" means the service to be offered by Defendants to OTIs as required by this Final Judgment having the same InstaSearch functionality as the InstaSearch Proof of Concept but permitting an OTI to vary the number of covered markets and the targeted refresh rate.

X.      "ITA" means Defendant ITA Software, Inc., a Delaware corporation headquartered in Cambridge, Massachusetts, and its subsidiaries (whether partially or wholly

owned), divisions, groups, Affiliates, partnerships, and joint ventures, and their directors,

officers, managers, agents, and employees (but excluding in all cases Google, as defined above.)

Y.     "Level 1 Query" means a specific type of pricing and shopping query, with the

definition and input and output data definitions specified in the InstaSearch POC Solution

Document, which, when submitted to the InstaSearch Service, returns certain cached results.  As

explained in detail in the InstaSearch POC Solution Document, a Level 1 Query will return data

that enables the OTI to populate a map showing to the user the best price to a range of

destinations from a particular origin over a particular range of dates.

Z.     "Level 2 Query" means a specific type of pricing and shopping query, with the

definition and input and output data definitions specified in the InstaSearch POC Solution

Document, which, when submitted to the InstaSearch Service, is passed through to QPX and is

not intended to return cached results.  As explained in detail in the InstaSearch POC Solution

Document, a Level 2 Query narrows the result set to the particular destination selected during the

user's Level 1 Query, and returns the cheapest solution for a range of departure days and stay

lengths.

AA.     "Level 3 Query" means a query submitted to the InstaSearch Service other than a

"Level 1 Query" or "Level 2 Query."

BB.     "Live Query," with respect to any OTI, has the definition set forth in the QPX

Agreement in effect between ITA and such OTI (or a definition given therein for "user query").

CC.     "OTI," or online travel intermediary, means a website offering (or proposing to

offer) airfare search functionality to consumers in the United States, other than a website owned

or operated by an airline.  Provided, however, that in the case of an OTI that is a line of business, business unit, subsidiary, or Affiliate of a company that also has non-OTI lines of business, business units, subsidiaries or Affiliates, the provisions in this Final Judgment that apply to OTIs will only apply to that line of business, business unit, subsidiary or Affiliate that offers airfare search services to consumers, and not to lines of business, business units, subsidiaries or Affiliates that do not offer airfare search services to consumers.

DD.    "OTI Confidential Information" means confidential and proprietary inventions, products, designs and ideas (including computer software), functionality, concepts, processes, internal structure, external elements, user interfaces, technology, and documentation belonging to an OTI, OTI Configuration Information, as well as confidential and proprietary information relating to the OTI's operations, plans, opportunities, finances, research, technology, developments, know-how, and personnel, that is disclosed to a Defendant by an OTI pursuant to a QPX Agreement or an InstaSearch Agreement to which such OTI is a party, except to the extent that such information is Excluded Information.

EE.    "OTI Configuration Information" means information related to an OTI's configuration or tuning of QPX or the InstaSearch Service or the parameters used by the OTI for particular types of queries.

FF.    "OTI Plan Information" means confidential information related to an OTI's current or future product or marketing plans that is disclosed by such OTI to a Defendant pursuant to a QPX Agreement or InstaSearch Agreement to which such OTI is a party, except to the extent that such information is necessary to implement a feature or features for the OTI or represents Excluded Information.

GG.   "QA Information" means Query Information or other information related to the performance, quality or accuracy of any software or service provided by a Defendant in connection with a QPX Agreement or InstaSearch Agreement, or one or more results generated by any such software or service, including:

(1)   reports of bugs or defects;

(2)   information related to the success or failure of an attempt to book or otherwise use a pricing and shopping solution provided by Defendants;

(3)   information related to the existence of solutions which potentially should have been, but were not, included in the results provided by Defendants; and

(4)   information related to instances in which other sources of information or methods of calculation lead to a different fare than that calculated by Defendants' products or services for a particular pricing and shopping solution (without regard to the merits of the different calculations).

QA Information may include OTI Configuration Information to the extent that it is associated with a particular query, result, report or request, provided that Defendants may not access the information in order to separate OTI Configuration Information from the QA Information as a whole, or to use the OTI Configuration Information for a purpose prohibited by Section VI.

HH.   "QPX" means the airfare pricing and shopping engine and Related Software deployed in production by ITA for Customers as of the date of the Complaint herein (provided

that nothing in this Final Judgment shall confer any rights to use the Related Software other than

to the extent that such Related Software is used by QPX), together with any enhancements,

upgrades, updates, or bug fixes thereto that Defendants must develop or license pursuant to

Sections IV.E and IV.F of this Final Judgment, whether or not licensed under the name QPX,

provided that in no event shall QPX include:

(1)   fare management capabilities that are part of ITA's Rule and Fare Display

System;

(2)   refund/reissue capability using Airline Tariff  Publishing Company

("ATPCO") Category 31 and Category 33;

(3)   award travel or frequent flyer related functionality;

(4)   InstaSearch in any form (including but not limited to that comprised in the

InstaSearch Proof of Concept or required to be licensed pursuant to this

Final Judgment), or any other technology having substantially greater or

different hardware requirements than QPX as deployed in production by

ITA for Customers (other than any Excluded Software) as of the date of

the Complaint herein that is not otherwise required to be licensed pursuant

to existing QPX Agreements or the terms of this Final Judgment;

(5)   middleware or other applications that may be related to, but are separate

from, the base airfare pricing and shopping engine;

(6)     any website or consumer-facing interface, application or technology, whether or not syndicated to multiple websites, including but not limited to the Google Services;

(7)     any product, service, application, technology, feature, or functionality not made available to Customers, whether or not derived from or based upon QPX, including, but not limited to, any product, service, application, technology, feature, or functionality that is exclusively used in or by one or more Google Services; or

(8)     Excluded Software.

II.     "QPX Agreement" means an agreement, other than an InstaSearch Agreement, between a Defendant and a Customer permitting the Customer to submit queries to or otherwise use QPX, whether denominated as a License Agreement, Services Agreement, or otherwise.

JJ.     "Qualifying Complaint" means a written complaint from an OTI that (i) identifies the OTI on behalf of whom the complaint is submitted; and (ii) alleges that Google is violating this Final Judgment or acting, directly or indirectly, in an unfair manner in connection with flight search advertising in the United States.

KK.     "Query Information" means information related to the execution and results of a particular query, including the query submitted to such service, the results returned in response to such query, operational data related to the execution of the query (e.g. the particular server(s) on which it was executed, the time it was received, the length of time needed to execute it, etc.), any intermediate results or errors generated during the execution of the query, and any information

that is known or received regarding the success or failure of the query for the Customer (e.g. bookability or pricing errors in the results).

LL.    "Related Software" means availability management and other software operated by ITA in connection with the provision of pricing and shopping results to Customers as of the date of the Complaint herein.

MM.    "Reporting Period" means the period beginning upon the entry of this Final Judgment and expiring at the earlier of (i) five years from the entry of the Final Judgment; or (ii) two years from the date that Google launches a Google Consumer Flight Search Service.

NN.    "Similarly Situated OTIs" means, with respect to any particular OTI seeking to enter into a QPX Agreement or InstaSearch Agreement, other OTIs having actual, reasonably expected (in terms of the OTI's own projections of its expected volume), and/or minimum QPX or InstaSearch query volumes (in the aggregate and as to specific types of queries) and, for QPX Agreements, fee metrics (e.g. per-query, per-ticket or per-Passenger Name Record ("PNR")), that are similar to those of such OTI (but excluding the OTI itself and its Affiliates).  This provision shall be interpreted broadly so as to avoid, where reasonably possible, the situation where an OTI has no or few Similarly Situated OTIs.

III.    **APPLICABILITY**

This Final Judgment applies to Defendants, as defined above, and all other persons in active concert or participation with any of them who receive actual notice of this Final Judgment by personal service or otherwise.

IV.   **REQUIRED CONDUCT**

**Licensing of QPX**

A.      Defendants shall honor the terms of all QPX Agreements in effect as of the entry

of this Final Judgment (including terms related to customization and query tuning services for

QPX), except and unless the terms of this Final Judgment provide additional rights to, or

eliminate restrictions on, OTIs, in which case Defendants may not enforce such terms against the

OTI.

B.      At the request of any OTI who is a party to a QPX Agreement as of the entry of

this Final Judgment, Defendants shall negotiate an extension of such OTI's QPX Agreement for

a term set at the reasonable discretion of the OTI (but that shall be no less than one year and that

need not extend beyond five years from the entry of this Final Judgment, provided that if such

extension would commence more than four years from the entry of this Final Judgment, its term

shall expire five years from the entry of this Final Judgment), on:

(1)    commercial terms (e.g. price, functionality, minimum query volumes and

permitted uses of QPX, as well as customization and query tuning services

for QPX) that are substantially similar to those governing such OTI's use

of QPX as of the entry of the Final Judgment, and

(2)    other terms (e.g. audit rights, choice of law and indemnification) that are

fair, reasonable, and non-discriminatory.

Notwithstanding anything in this paragraph, Defendants shall not require an OTI to include in an

extension any provision that Defendants would be prohibited from requiring in a new QPX

Agreement pursuant to section IV.D of this Final Judgment, provided that, if an OTI elects to remove such a provision from the extension, or requests an extension with a different term than its QPX Agreement in effect as of the entry of the Final Judgment, the commercial terms of such extension shall be modified in a corresponding manner that is fair, reasonable and non-discriminatory in light of the commercial terms of QPX Agreements in effect between Defendants and Similarly Situated OTIs as of or subsequent to the date of this Final Judgment.

C.      At the request of any OTI who is not party to a QPX Agreement, or whose QPX Agreement will expire within one year of such request, Defendants shall negotiate a QPX Agreement with such OTI for a term set at the reasonable discretion of the OTI (but that shall be no less than one year and that need not extend beyond the date that is five years from the entry of this Final Judgment, provided that if such QPX Agreement would commence more than four years from the entry of this Final Judgment, its term shall expire five years from the entry of this Final Judgment), on:

(1)      commercial terms (e.g. price, functionality, minimum query volumes and permitted uses of QPX, as well as customization and query tuning services for QPX) that are fair, reasonable and non-discriminatory judged exclusively in relation to the OTI's chosen contract term, desired fee metrics (e.g. per-query, per-ticket, or per-PNR), reasonably expected query volume, the minimum query volume to be included in such QPX Agreement, and the commercial terms of QPX Agreements in effect between Defendants and Similarly Situated OTIs as of or subsequent to the date of this Final Judgment, and

(2)      other terms (e.g. audit rights, choice of law, and indemnification) that are

fair, reasonable, and non-discriminatory.

D.      Defendants may not require that a QPX Agreement entered into pursuant to

Section IV.B or Section IV.C of this Final Judgment prevent the OTI from using alternative

products to QPX sold by companies other than Defendants.  Defendants and the OTI may,

however, enter an exclusive QPX Agreement if Defendants offer the OTI a non-exclusive

agreement on fair, reasonable, and non-discriminatory terms.

E.      All QPX Agreements with OTIs shall include the right to use ordinary course

upgrades to QPX that Defendants make available to Customers without additional charge during

the term of such QPX Agreement.  If Defendants make an ordinary course upgrade to QPX

available to Customers, but require the payment of an additional charge, Defendants may

condition the use of such upgrade pursuant to this paragraph upon the payment of an equivalent

charge, provided that such charge is fair, reasonable, and non-discriminatory.   Defendants shall

make available to OTIs the same version of QPX as they make available to Customers, including

but not limited to any version made available to Airline Customers.  This paragraph does not

require Defendants to make available to OTIs InstaSearch or any other product, feature or

technology excluded from the definition of QPX above, including the Excluded Software.

F.      Defendants shall, on an annual basis, devote substantially as many (or more)

engineering resources (in terms of budget and full-time-equivalent employees) to the research

and development and maintenance of QPX and the InstaSearch Service (other than resources

devoted to the development of the InstaSearch Proof of Concept as required by agreements

entered into by ITA prior to the date of the Complaint herein) for the use of Customers as ITA

did in the average of the two years prior to the filing of the Complaint herein (excluding resources devoted by ITA to any aspect of its passenger service system, reservations system, inventory system or Internet booking engine, including but not limited to the integration of QPX into such system, and resources devoted to the development of products or services that are excluded from the definition of QPX in this Final Judgment, including but not limited to ITA's InstaSearch).  Defendants shall make commercially reasonable efforts to respond to Customers' requests for development of QPX, consistent with ITA's past practice prior to the date of the Complaint herein.  Provided, however, that:

(1)     if the amount of revenue derived by Defendants from third-party licensing of QPX materially decreases during the term of the Final Judgment, Defendants shall be permitted to make a corresponding reduction in the amount of resources committed pursuant to this paragraph, provided that Defendants shall obtain the consent of the United States prior to making such reduction, which consent shall not be unreasonably withheld or delayed; and

(2)     the degree to which particular efforts benefit Defendants or Google Services shall not be considered in evaluating whether such efforts qualify as "research and development and maintenance of QPX for the use of Customers," so long as those efforts are legitimately beneficial to Customers and not solely beneficial to Defendants or Google Services.

G.     Nothing in this Final Judgment shall require Defendants to provide to any third party any product, service, or technology (or feature thereof) that Defendants develop

exclusively for use in the Google Services, nor shall any such product, service, or technology, or the relative functionality of one or more Google Services (including, but not limited to, the Google Consumer Flight Search Service) when compared to third-party websites using QPX, be considered in determining Defendants' compliance with any provision of this Final Judgment.

## Licensing of InstaSearch

H.       At the request of any OTI, Defendants shall negotiate an InstaSearch Agreement with such OTI for a term set at the reasonable discretion of the OTI (but that shall be no less than one year and that need not extend beyond five years from the entry of this Final Judgment, provided that if such InstaSearch Agreement would commence more than four years from the entry of this Final Judgment, its term shall expire five years from the entry of this Final Judgment).  Such InstaSearch Agreement shall:

(1)       offer the OTI the same functionality as the InstaSearch Proof of Concept, except that Defendants shall permit the OTI to increase the number of markets covered and contemplated cache refresh rate beyond that of the InstaSearch Proof of Concept, subject to the payment of appropriate fees as set forth below (and such InstaSearch Agreement shall expressly provide that Defendants shall have no obligation to implement any other functionality);

(2)       at Defendants' option, disclaim any representations, warrantees, guarantees, or service level agreements as to the performance of the InstaSearch Service, or its fitness for any use, notwithstanding any statements to the contrary made by ITA in connection with the InstaSearch Proof of Concept, including but not limited to in the InstaSearch POC Solution Document, provided that if, during the term of

such QPX Agreement, Defendants make any representations, warrantees, guarantees or service level agreements to any Customers as to the performance of the InstaSearch Service, Defendants shall offer the same representations, warrantees, guarantees or service level agreements to OTIs with equivalent projected usage of the InstaSearch Service (including the number and types of markets to be covered, refresh rate, provisioned hardware and total expected volume), subject to such OTI agreeing to pay a fair, reasonable and non-discriminatory fee for the receipt of such representation, warrantee, guarantee or service level agreement, which may differ from the pricing structure and limits set forth in Section IV.H.4 below.

(3)     provide that Defendants shall have no obligation to improve the InstaSearch Service, except that:

(a)     if during the term of such InstaSearch Agreement, Defendants provide their Customers, including solely Airline Customers, an implementation of InstaSearch with greater functionality than the InstaSearch Service described herein without requiring them to pay an additional charge (other than in Excluded Software), Defendants shall make reasonable commercial efforts to also make such improved version available to the OTI pursuant to its InstaSearch Agreement (recognizing that not all implementations will be suitable for all types of Customers even after the use of reasonable commercial efforts), under the same pricing terms provided for in such InstaSearch Agreement; and

18

(b)      if Defendants require its Customers, including its Airline Customers, to pay an additional fee to obtain an upgrade which can be provided to OTIs with reasonable commercial efforts, Defendants shall offer the upgrade to OTIs with an InstaSearch Agreement, but may condition availability of the upgrade on payment of a fair, reasonable, and non-discriminatory charge (which may differ from the pricing structure and limits set forth in Section IV.H.4 below);

(4)      obligate the OTI to:

(a)      provision with Defendants a number of EUs for its InstaSearch Service that, in Defendants' discretion, which shall be applied in a fair, reasonable, and non-discriminatory manner, is reasonable given the OTI's intended covered markets and refresh rate, and to pay a monthly per-EU fee for each EU so provisioned (including any EUs used for computing, storing, managing or retrieving cached results) equal to the lesser of (i) for OTIs with a QPX Agreement in effect, the per-EU fee set forth in such QPX Agreement (giving effect to all volume discounts and aggregating EUs provisioned for InstaSearch with those provisioned for other purposes, including, but not limited to, QPX.); or (ii) a per-EU fee that is fair, reasonable, and non-discriminatory solely in light of the EU fees charged by Defendants to Similarly Situated OTIs in QPX Agreements then in effect.

(b)     pay a fair, reasonable and non-discriminatory per-query fee for

each Level 1 and Level 2 Query it submits to the InstaSearch

Service that shall be (i) greater than the effective per-query fee

paid by such OTI for Database Queries (or, if no such rate exists,

an amount that is fair, reasonable, and non-discriminatory in light

of the effective per-query fees then charged by Defendants to

Similarly Situated OTIs for Database Queries), and (ii) less than

the effective per-query fee paid by such OTI for Live Queries (or,

if no such rate exists, an amount that is fair, reasonable, and non-

discriminatory in light of the effective per-query fees then charged

by Defendants to Similarly Situated OTIs for Live Queries); and

(c)     pay a per-query fee for each Level 3 Query it submits equal to the

effective per-query fee paid by such OTI for Live Queries (or, if no

such rate exists, an amount that is fair, reasonable, and non-

discriminatory in light of the effective per-query fees then charged

by Defendants to Similarly Situated OTIs for Live Queries).

I.      Defendants shall make commercially reasonable efforts to ensure that the

InstaSearch Service conforms to the technical specifications set forth in the InstaSearch POC

Solution Document, but it is specifically understood that, other than as set forth in any

representations, warrantees, guarantees or service level agreements that Defendants are otherwise

required to make pursuant to this Final Judgment, or that Defendants make in any particular

InstaSearch Agreement, Defendants make no representation, either to the United States, the

Court or to any Customer that the InstaSearch Service will prove commercially useful for any Customer.

J.      Nothing in this Final Judgment shall be deemed to require Defendants to permit an OTI to host any portion of the InstaSearch Service, or the EUs used for such service, on the OTI's own hardware, notwithstanding any provisions of such OTI's QPX Agreement.

## **Arbitration**

K.      Defendants shall negotiate in good faith with any OTI seeking a QPX Agreement or an InstaSearch Agreement pursuant to this Final Judgment (including, but not limited to, existing licensees seeking to renew their agreements).  If Defendants and the OTI are unable to reach agreement on the amount to be charged for any type of query pursuant to Sections IV.B.1, IV.C.1, or IV.H.4 of this Final Judgment, Defendants shall submit the matter to binding arbitration under the following conditions:

(1)      Prior to submitting any matter to arbitration, Defendants and the OTI shall each designate a contact having the proper authorization to resolve the dispute in a final and binding fashion, who shall meet in person or by telephone for a period of 30 days (or such other period of time as Google and the OTI shall mutually agree) in an attempt to resolve the dispute. The contact for Defendants shall be Google's General Counsel or his or her designee.

(2)      No arbitration shall be commenced unless the OTI (i) has certified to the United States that it negotiated in good faith, including participation in the

resolution procedure described in the preceding paragraph; and (ii) has obtained the consent of the United States, in its sole discretion, to initiate arbitration.

(3)     Arbitration pursuant to this Final Judgment shall be conducted in accordance with the AAA's Commercial Arbitration Rules and Expedited Procedures, except where inconsistent with specific procedures prescribed by this Final Judgment.  As described below in Section IV.J.12, the arbitrator shall select the Final Offer of either the OTI or the Defendants and may not alter, or request or demand alteration of, any terms of those Final Offers.  The decision of the arbitrator shall be binding on the parties as to the matters properly submitted to arbitration pursuant to this Final Judgment, and Defendants shall abide by the arbitrator's decision by offering an executable QPX Agreement or InstaSearch Agreement (as appropriate) to the OTI incorporating the pricing terms selected by the arbitrator.

(4)     Defendants and an OTI may, by agreement, modify any time periods specified in this Section IV.J.

(5)     Upon obtaining the consent of the United States to initiate arbitration, the OTI may commence arbitration by filing with the AAA and furnishing to the AAA and the United States its Final Offer.  Within five business days of the commencement of an arbitration, Defendants shall file with the AAA and furnish to the United States their Final Offer.  After the AAA

has received Final Offers from the OTI and Defendants, it will immediately furnish a copy of each Final Offer to the other party.

(6)     Within five business days of the commencement of an arbitration, the OTI and the Defendants each shall furnish a legally binding writing to the other and to the United States committing to maintain the confidentiality of the arbitration and of any Final Offers and discovery materials exchanged during the arbitration, and to limit the use of any Final Offers and discovery materials to the arbitration.  The writing shall expressly state that all records of the arbitration and any discovery materials may be disclosed to the United States.

(7)     At any time after the commencement of arbitration, the OTI and Defendants may agree to suspend the arbitration, for periods not to exceed 14 days in the aggregate, to attempt to resolve their dispute through negotiation.  The OTI and the Defendants shall effectuate such suspension through a joint writing filed with the AAA and furnished to the United States.  Either the OTI or the Defendants may terminate the suspension at any time by filing with the AAA and furnishing to the United States a writing calling for the arbitration to resume.

(8)     The AAA, in consultation with the United States, shall assemble a list of potential arbitrators, to be furnished to the OTI and Defendants as soon as practicable after commencement of the arbitration.  Such potential arbitrators shall, to the greatest extent possible, be individuals familiar

23

with the travel industry as well as this Final Judgment.  Within five

business days after receipt of this list, the OTI and Defendants each may

submit to the AAA the names of up to 20 percent of the persons on the list

to be excluded from consideration, and shall rank the remaining arbitrators

in their orders of preference. The AAA, in consultation with the United

States, will appoint as arbitrator the candidate with the highest ranking

who is not excluded by the OTI or Defendants.

(9)     The OTI and the Defendants shall exchange written discovery requests

within five business days of receiving the other party's Final Offer, and

shall exercise reasonable diligence to respond within 14 days.  Discovery

shall be limited to the following items in the possession of the parties:  (i)

previous agreements between the OTI and the Defendants; (ii) current and

prior QPX Agreements and agreements relating to InstaSearch between

the Defendants and other OTIs; and (iii) records of past arbitrations

pursuant to this Final Judgment.

(10)    The scope of the arbitration shall be limited to the determination of a fair,

reasonable and non-discriminatory fee to be charged for each type of

query in dispute, judged exclusively in light of the following factors:

(a)     The OTI's actual or reasonably expected query volume;

(b)     The minimum query volume to be required in the QPX Agreement

or InstaSearch Agreement for such query type;

(c)     The amounts charged for such queries to Similarly Situated OTIs

pursuant to QPX Agreements in effect between Defendants and

such OTIs, as appropriately adjusted for the change in the

Consumer Price Index, for all Urban Consumers, Subgroup "All

Items", U.S. City Average, for (base Year 1982-84=100)

subsequent to the date of such agreements; and

(d)     if applicable, the nature and extent of any representations,

warrantees, guarantees or service level agreements offered to such

OTI.

(11)     In reaching his or her decision, the arbitrator may consider only

documents exchanged in discovery between the parties, testimony

explaining the documents and the parties' Final Offers, and briefs

submitted and arguments made by counsel.

(12)     Arbitrations under this Final Judgment shall begin within 30 days of the

AAA furnishing to the OTI and to the Defendants, pursuant to Section

IV.J.5, each party's Final Offer.  The arbitration hearing shall last no

longer than ten business days, after which the arbitrator shall have five

business days to inform the OTI and the Defendants which Final Offer

best reflects fair, reasonable, and non-discriminatory terms under this

Final Judgment.

(13)     The Arbitrator shall have no authority to consider or determine

Defendants' compliance with the terms of this Final Judgment or with any

other agreement, or to determine the reasonableness of any provision of a

proposed or negotiated QPX Agreement or InstaSearch Agreement other

than those for which arbitration was specifically provided for above.

(14)   Any Arbitrator's fees and any costs payable to the Arbitrator shall be

shared equally by the parties to the arbitration.  Each party to the

arbitration shall bear its own legal fees and expenses.

L.   Nothing in Section IV.K shall prevent Defendants from agreeing with an OTI (i)

on fees or other terms that are more favorable to the OTI than those required by this Final

Judgment, (ii) to withdraw a matter from arbitration prior to decision; or (iii) to supersede a

previously arbitrated rate as a part of a freely negotiated contract or amendment.

M.   Nothing in Section IV.K shall limit the ability of the United States to enforce this

Final Judgment in Court, including as to matters covered by an existing or potential arbitration

proceeding.

### Required Disclosures

N.   Google shall, throughout the Reporting Period, make available a web page at

http://itaqualifyingcomplaint.com which shall contain a web form permitting OTIs to submit

Qualifying Complaints, as well as a link to this Final Judgment, and shall, on a semiannual basis

during the Reporting Period, furnish copies of any Qualifying Complaints received via such form

to the Department of Justice.

O.   To the extent that, during the Reporting Period, an attorney employed by

Google's Legal Department (or an outside attorney retained by Google and acting at the direction

of Google's Legal Department) communicates with an OTI with respect to a written complaint

that the Google attorney reasonably believes would, if submitted as set forth in the preceding

paragraph, be a Qualifying Complaint, such attorney shall take reasonable steps to ensure that the

OTI is informed of its right to submit a Qualifying Complaint and the web address at which it

can do so.

## V.   **ADDITIONAL PROVISIONS**

A.      Defendants shall not enter into any agreement with an airline that restricts that

airline's right to share any Availability Information with parties other than Defendants, provided

that this paragraph shall cease to apply to any type of Availability Information (regardless of

source) if one or more airlines enters into an agreement with one or more of Defendants'

competitors (either in the provision of airfare pricing and shopping services or in the provision of

OTI services) that restricts that airline's right to share such Availability Information with parties

other than such competitor(s).

B.      To the extent that Defendants obtain Availability Information from any airline for

use as an input to an airfare pricing and shopping engine used by the Google Consumer Flight

Search Service, Defendants shall also incorporate such Availability Information into QPX results

generated for all OTIs who are party to a QPX Agreement, unless the airline explicitly and

unilaterally restricts the use of such Availability Information by or for one or more OTIs.

Defendants shall not provide any incentive to an airline to restrict the use of Availability

Information by another OTI.

C.      Notwithstanding the foregoing, nothing in this Final Judgment shall (i) restrict

Defendants' right to enter into agreements by which they become an authoritative source of an

airline's Availability Information for third parties (including, but not limited to, agreements to provide passenger service systems, reservations systems, availability hubs or similar systems); or (ii) be deemed to prohibit Defendants from obtaining access to or using Availability Information merely because the providing airline has not provided it to any party other than Defendants, so long as the airline retains the right to provide such Availability Information to another party at any time, in its unilateral discretion.

D.      Defendants shall not condition the provision of QPX or the InstaSearch Service on whether or how much an OTI spends on other products or services sold by Google.

E.      Nothing in this Final Judgment shall be deemed to alter, in any way, the terms of any agreement Defendants may have with any customer related to any product or service other than QPX or the InstaSearch Service.

## VI.      **FIREWALL**

A.      No Covered Employee shall access any OTI Configuration Information or any OTI Plan Information, except to the extent such information constitutes or is included within QA Information, or with the written consent of the OTI concerned.

B.      Defendants shall not use OTI Confidential Information for any purpose other than:

(1)      in connection with the marketing, sale, or provision of any product or service to such OTI (or, with the consent of such OTI, or its Affiliates);

(2)      in connection with billing, invoicing, financial reporting, financial or capacity forecasting, compensation, audit, legal, compliance, or similar administrative or financial purposes;

(3)      in connection with the development, maintenance and improvement of QPX and the InstaSearch Service, in accord with ITA's past practices prior to agreeing to be acquired by Google; or

(4)      as permitted by such OTI in writing.

C.      Notwithstanding anything in this Final Judgment, Defendants shall be permitted to access and use QA Information in connection with the development, maintenance and improvement of Defendants' airfare pricing and shopping engines (including those not made available to any Customers), provided that Defendants shall not extract any customer identifiable OTI Configuration Information or use any OTI Configuration Information for the purpose of changing, improving or comparing the Google Consumer Flight Search Service's use of any airfare pricing and shopping engine.

D.      Defendants shall implement reasonable procedures to prevent OTI Confidential Information from being used or accessed by employees other than those having a legitimate need for such information in connection with the permitted uses of such information set forth in this Section VI.  Nothing in this Final Judgment shall restrict Defendants' right to assign any employee to any job responsibility, or otherwise to restrict the ability of employees who have previously had access to or used OTI Confidential Information in the course of prior job responsibilities from subsequently assuming additional or different responsibilities for Defendants, provided that such employees shall not use OTI Confidential Information for any

purpose other than as permitted by this Final Judgment.  An employee shall not be deemed to have "used" OTI Confidential Information solely on account of his or her prior access to OTI Confidential Information, absent evidence of intentional reliance on information other than information that is retained in the unaided memory of such employee (provided that memory is "unaided" if the employee has not intentionally memorized the information for the purpose of retaining and subsequently using or disclosing it) or an affirmative intention to violate or evade the terms of this Final Judgment.  Defendants shall, upon the reasonable request of the United States, provide the United States with a list of employees who have had access to or used OTI Confidential Information at any point after the filing of the complaint in this matter who also have job responsibilities in addition to those set forth in Section VI.B, above.

E.   Defendants shall, within thirty (30) calendar days of the entry of the Stipulation and Order, submit to the Department of Justice a document setting forth in detail the procedures implemented to effect compliance with Sections VI.A, VI.B, and VI.C of this Final Judgment. The Department of Justice shall notify Defendants within ten (10) business days whether it approves of or rejects Defendants' compliance plan, in its sole discretion.  In the event that Defendants' compliance plan is rejected, the reasons for the rejection shall be provided to Defendants and Defendants shall be given the opportunity to submit, within ten (10) business days of receiving the notice of rejection, a revised compliance plan. If the parties cannot agree on a compliance plan, the United States shall have the right to request that the Court rule on whether Defendants' proposed compliance plan is reasonable.

F.   Defendants may at any time submit to the United States evidence relating to the actual operation of the firewall in support of a request to modify the firewall set forth in Section VI.  In determining whether it would be appropriate for the United States to consent to modify

the firewall, the United States, in its sole discretion, shall consider the need to protect OTI

Confidential Information and the impact the firewall has had on Defendants' ability to efficiently

support OTIs and the Google Consumer Flight Search Service.

VII.   **COMPLIANCE INSPECTION**

A.      For purposes of determining or securing compliance with this Final Judgment, or

of determining whether the Final Judgment should be modified or vacated, and subject to any

legally recognized privilege, from time to time duly authorized representatives of the Department

of Justice, including consultants and other persons retained by the Department of Justice, shall,

upon written request of an authorized representative of the Assistant Attorney General in charge

of the Antitrust Division, and on reasonable notice to Defendants, be permitted

(1)      access during the Defendants' office hours to inspect and copy, or at the

option of the United States, to require Defendants to provide to the United

States hard copy or electronic copies of, all books, ledgers, accounts,

records, data, and documents in the possession, custody, or control of

Defendants, relating to any matters contained in this Final Judgment; and

(2)      to interview, either informally or on the record, the Defendants' officers,

employees, or agents, who may have their individual counsel present,

regarding such matters. The interviews shall be subject to the reasonable

convenience of the interviewee and without restraint or interference by

Defendants.

B.      Upon the written request of an authorized representative of the Assistant Attorney

General in charge of the Antitrust Division, Defendants shall submit written reports or respond to

written interrogatories, under oath if requested, relating to any of the matters contained in this Final Judgment as may be requested. Written reports authorized under this paragraph may, at the sole discretion of the United States, require Defendants to conduct, at their cost, an independent audit or analysis relating to any of the matters contained in this Final Judgment.

C.      No information or documents obtained by the means provided in this section shall be divulged by the United States to any person other than an authorized representative of the executive branch of the United States, except in the course of legal proceedings to which the United States is a party (including grand jury proceedings), or for the purpose of securing compliance with this Final Judgment, or as otherwise required by law.

D.      If at the time information or documents are furnished by a Defendant to the United States, the Defendant represents and identifies in writing the material in any such information or documents to which a claim of protection may be asserted under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure, and the Defendant marks each pertinent page of such material, "Subject to claim of protection under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure," then the United States shall give the Defendants ten (10) calendar days notice prior to divulging such material in any legal proceeding (other than a grand jury proceeding).  The United  States will provide such notice electronically to an individual designated by Google to receive such notices.

VIII.   **RETENTION OF JURISDICTION**

This Court retains jurisdiction to enable any party to this Final Judgment to apply to this Court at any time for further orders and directions as may be necessary or appropriate to carry out or construe this Final Judgment, to modify any of its provisions, to enforce compliance, and to punish violations of its provisions.

IX.     **EXPIRATION OF FINAL JUDGMENT**

Unless modified by this Court, this Final Judgment shall expire five years from the date of its entry.

X.      **PUBLIC INTEREST DETERMINATION**

Entry of this Final Judgment is in the public interest.  The parties have complied with the requirements of the Antitrust Procedures and Penalties Act, 15 U.S.C. § 16, including making copies available to the public of this Final Judgment, the Competitive Impact Statement, and any comments thereon and the United States' responses to comments.  Based upon the record before the Court, which includes the Competitive Impact Statement and any comments and response to comments filed with the Court, entry of this Final Judgment is in the public interest.

Date: October 5, 2011

Court approval subject to procedures of the Antitrust Procedures and Penalties Act, 15 U.S.C. § 16.

Digitally signed by Judge Robert L. Wilkins
DN: cn=Judge Robert L. Wilkins, o=U.S. District Court, ou=Chambers of Honorable Robert L. Wilkins, email=RW@dc.uscourt.gov, c=US
Date: 2011.10.05 07:48:47 -04'00'

_____
Robert L. Wilkins
United States District Judge